Patricia H. Lyon, Esq. (State Bar Number 126761)
James H. French, Esq. (State Bar Number 53555)
Celine Mui, Esq. (State Bar Number 267786)
FRENCH & LYON
Attorneys At Law
a Professional Corporation
22 Battery Street, Suite 404
San Francisco, CA 94111
Telephone: 415-597-7849
Facsimile: 415-243-8200
phlyon@aol.com
cmui@frenchandlyon.com

Attorney for Secured Creditor,
BANK OF AMERICA, N.A.

FILED
September 19, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003774562

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

(Sacramento Division)

In re:

SHASTA LAKE RESORTS, LP.

Debtor.

Case No.: 11-37221

Chapter 11

Docket Control No. DB-006

**STIPULATION FOR ORDER AUTHORIZING DEBTOR IN POSSESSION SHASTA LAKE RESORTS, LP'S USE OF CASH COLLATERAL**

On July 14, 2011, the Court entered its Interim Order Authorizing Debtor in Possession Shasta Lake Resorts, LP's ("SLR") Use of Cash Collateral ("Interim Order"). In addition to authorizing the use of cash collateral through September 2007, the Interim Order set a final hearing for cash collateral pursuant to Bankruptcy Rule 4001(b) for September 7, 2011 at 10:00 a.m. ("Final Hearing").

Secured Creditor BANK OF AMERICA, N.A. ("Secured Creditor") has agreed that Debtor may use cash collateral on the terms and conditions set forth in this Stipulation, subject to

-1-
STIPULATION TO USE CASH COLLATERAL
CASE NO. 11-37221

1187169.2

approval of the Court.

Accordingly, Debtor, by and through its attorney of record Jamie P. Dreher of Downey Brand LLP, and, Secured Creditor, by and through its attorney of record Patricia H. Lyon of French & Lyon, a Professional Corporation, hereby enter into this Stipulation to Use Cash Collateral, based upon the following facts:

1. Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on or about July 13, 2011 ("Petition Date"). The Debtor continues to manage and operate the estate as a Debtor-in -Possession. No Unsecured Creditors Committee has been appointed in this case.

2. The Debtor owns and manages a luxury houseboat rental business with the trade name of houseboat.com ("Business").

3. Secured Creditor holds a certain documents and agreements, including without limitation a Loan Amendment and Consolidation Agreement, and a Security Agreement (collectively, the "Loan Documents"), executed by Debtor and evidencing a loan and line of credit in the original principal amount of $7,000,000 (the "Loan"). Pursuant to the Security Agreement, the Loan is secured by Debtor's personal property, including without limitation inventory, chattel paper, equipment, general intangibles and accounts, together with all proceeds and products of the same (the "Collateral"). Secured Creditor perfected its interest in the Collateral pursuant to a UCC-1 Financing Statement filed with the California Secretary of State.

4. A portion of the Collateral also constitutes "Cash Collateral" as that term is defined in 11 U.S.C. §363(a).

5. The Debtor does not dispute that Secured Creditor has a fully perfected lien against the Cash Collateral.

6. The Debtor is in default under the terms of the Loan Documents. As of the Petition Date, the principal balance of the Loan secured by the Collateral is in excess of $3,977,824.16, plus interest, collection costs, and attorney's fees and costs recoverable under the terms of the Loan Documents (the "Indebtedness").

/ / /

7. Secured Creditor contends that it has duly performed any conditions precedent on its part to be performed under the Loan Documents.

8. The Debtor represents that no consensual liens or encumbrances senior to those of Secured Creditor exist against the Collateral and acknowledges that Secured Creditor has specifically relied on this representation in its consent to this Stipulation. Invalidity of this representation is a specific event of default under this Stipulation, giving rise to the Secured Creditor's remedies set forth below.

9. The Debtor needs to use the Cash Collateral to operate Debtor's Business.

10. Secured Creditor has agreed to the use of its Cash Collateral subject to Debtor's compliance with the terms set forth herein.

*NOW THEREFORE*, the Debtor and Secured Creditor enter into following agreement to use Cash Collateral on the following terms:

1. Definitions.

   A. The term "Cash Collateral" shall have the same meaning as provided by 11 U.S.C. Section 363(a).

2. Existing Agreements.

Except as modified by this Stipulation, all terms, conditions and provisions of the Loan Documents shall remain in full force and effect. This Stipulation or any other document executed by Debtor in favor of Secured Creditor in connection with this bankruptcy case shall be considered to supplement and not replace any agreement previously entered into between Secured Creditor and the Debtor. Notwithstanding the foregoing, the terms of any Plan of Reorganization confirmed by the Court in this case shall govern and provide the applicable terms, conditions, and provisions of the indebtedness of Debtor to Secured Creditor from and after the effective date of the confirmed Plan of Reorganization.

3. The Debtor acknowledges that it is not presently aware of any grounds to challenge the validity, enforceability, or priority of the Secured Creditor's pre-petition claims or liens against the Collateral or the Cash Collateral.

4. Terms and Conditions for the Use of Cash Collateral.

  A. Subject to the terms and conditions herein, the Debtor shall be entitled to use the Cash Collateral and to pay certain of the Debtor's actual and necessary operating expenses incurred after the Petition Date as set forth in Exhibit 1 (the "Budget") through the term of this Stipulation.

  B. All Cash Collateral heretofore collected and in the possession or under the control of the Debtor, and all Cash Collateral hereafter collected by the Debtor, shall be deposited into a debtor-in-possession bank account (the "Cash Collateral Account") and kept separate from any other funds of the Debtor. For purposes of this Stipulation, the Cash Collateral Account shall mean a debtor-in-possession bank account held at Union Bank.

  C. From the Cash Collateral Account, the Debtor may transfer to its payroll account and/or other existing accounts and pay those actual expenses set forth in the Budget which are incurred in the ordinary course of the Debtor's business and which are consistent with the terms of this Stipulation.

  D. Without the written consent of Secured Creditor, the total payments for monthly expenses shall not exceed the budgeted amount by more than ten percent (10.0%) of each line item contained in the budget, or one hundred and ten percent (110.00%) of the aggregate of all line items included on the Budget in any one month. No other payments or expenditures shall be made except as the Secured Creditor may specifically authorize in writing, which shall not be unreasonably withheld and the response to any such written request shall be provided in the most expeditious manner possible. For purposes of any such request, an email to counsel for the Secured Creditor including such request shall satisfy the requirement of a writing, as will any such response by email to the Debtor's counsel. Any unused sum remaining in any one category of expense may not be rolled over to a subsequent month, unless such rollover is because payment of an expense category was not yet due or made in such prior month but such expense was nonetheless incurred.

///

1187169.2

5. Adequate Protection Payments. The Debtor shall remit to Secured Creditor monthly adequate protection payments (the "Adequate Protection Payments") equal to the amount of interest accrued on a daily basis at a rate of Prime plus 2.5% per annum on the unpaid principal balance of the Loan no later than the 1st calendar day of each month, such payments to be retroactive to the Petition Date. Currently, such monthly interest payment for the month of September 2011 is estimated to be $19,060.41, based on interest accrued on a principal balance of $3,977,824 at the Prime rate of 3.25% plus 2.5% per annum, and to be adjusted after application of the proceeds of the sale houseboats to the outstanding indebtedness. Within 5 days of the entry of an Order approving this Stipulation, the Debtor shall deliver an Adequate Protection Payment for an amount sufficient to pay such interest from the Petition Dateto September 1, 2011. Such interest amount is $31,132.00 based on an interest rate of Prime plus 2.5% from July 14, 2011 through August 31, 2011 (49 days) using a principal balance of $3,977,824. If this Stipulation is not approved by October 1, 2011, the Adequate Protection Payment then due shall include the October 1, 2011 Adequate Protection Payment.

All payments should be delivered to Secured Creditor as follows:

If by Wire:

Bank of America, NA
ABA #026009593
Account #1366211001000
Attention: (Kathy S. Wood, 206.358.8196)
$ (insert amount of wire)
Shasta Lake Resorts Co # 493, Bank 16 -950230/299
Special Instructions: Include pertinent information, such as if funds are for a principal and/or interest payment.

If by U.S. Mail:

Susanne M. Perkins
Vice President & Portfolio Officer
Bank of America N.A.
Mailing Address Only
Fifth Avenue Plaza Floor 13
800 5th Ave
Seattle, WA 98104-3176
WA1-501-13-24
Telephone: 650.726.4507

6. Debtor further agrees that any turnover to Secured Creditor of the Cash Collateral pursuant to this Stipulation is voluntarily made. The Debtor further agrees that any turnover to Secured Creditor of the Cash Collateral shall not constitute a cure of any default or a waiver of Secured Creditor's right to exercise any of its rights or remedies under the Loan Documents. Nothing herein shall constitute a waiver by Secured Creditor of its right to collect the actual amount of interest that is due and payable under the Loan Documents, including without limitation the default rate of interest provided for therein. Notwithstanding the foregoing, nothing in this Paragraph or Stipulation shall be deemed to limit the Debtor or the Secured Creditor's ability to modify such terms either by agreement or pursuant to a Plan of Reorganization which is confirmed by the Court in this case.

7. Post-Petition Liens; Adequate Protection.

A. By virtue of, among other things, the provisions of the Loan Documents, Secured Creditor asserts that it holds a valid, duly perfected, enforceable and non-avoidable most senior security interest in the Cash Collateral. As further partial adequate protection for the continued use by the Debtor of the Cash Collateral as provided for under this Stipulation, Secured Creditor shall be granted a valid, duly perfected, enforceable and non-avoidable replacement lien and security interest of the same priority in all post-petition Cash Collateral and other personal property of the Debtor to the extent such property is covered by Secured Creditor's Security Agreement and UCC-1 Financing Statement (collectively, the "Post-Petition Collateral"). The Debtor shall execute such documents as Secured Creditor may require to perfect its security interest hereunder, but entry of the Court's order approving this Stipulation shall constitute a validly perfected first lien and security interest upon the Post-Petition Collateral generated after the Petition Date and no filing, recordation or other act in accordance with any applicable local, state or federal law shall be necessary to create or perfect such lien and security interest.

B. The post-petition liens in favor of Secured Creditor shall secure repayment to Secured Creditor of the difference between the actual amount of Cash Collateral spent by the Debtor from and after the Petition Date and the Cash Collateral unspent for the same time period.

The post-petition liens granted hereby shall not in any way reduce, eliminate or supersede any security interest previously granted to Secured Creditor, but shall instead be a continuation thereof, from and after the Petition Date.

8. Sale of Used Houseboats.

Subject to the provisions set forth herein, the Debtor and Secured Creditor agree that Debtor may continue to market and sell used houseboats in the ordinary course of the Debtor's business. The Debtor acknowledges and agrees that Debtor's used houseboats are "inventory" and are subject to Secured Creditor's lien. Accordingly, any proceeds generated from the sale of Debtor's used houseboats are proceeds of Secured Creditor's collateral and constitute Cash Collateral. In addition to the Adequate Protection Payments provided for herein, the Debtor agrees that 100% of the Net Sale Proceeds of each houseboat to be sold shall be paid to Secured Creditor as a condition of any sale, in exchange for the payment of which Secured Creditor shall release its lien against the houseboat being sold. The Net Sale Proceeds must equal or exceed the Net Book Value as reflected in Debtor's records as of December 31, 2010. "Net Sale Proceeds" as used herein means 100% of the proceeds of sale after deduction for sales taxes, registration and transfer fees costs, permit fees. Notwithstanding the foregoing, the Secured Creditor may, in its sole discretion, agree to release its lien against any houseboat for an amount less than the Net Book Value. "Sale" as used in this Stipulation shall mean the transfer of title to any houseboat subject to Secured Creditor's lien, no matter how structured, including without limitation, pursuant to a sale and leaseback arrangement, to any person or entity, other than Debtor, including without limitation, to any related entity or affiliate of Debtor.

9. Liquidation of McClure Site Assets. The Debtor and Secured Creditor agree that the net proceeds of the sale or other liquidation of Secured Creditor's Collateral related to the business operations at the Debtor's Lake McClure site shall be held pending further agreement or allocation of such assets. The Debtor shall account for such liquidation and sale of Collateral in the reports to be provided to the Secured Creditor. The Debtor agrees that such assets will not be sold without court approval and with notice to the Secured Creditor and an opportunity to be heard

-7-

1187169.2

on any such sale or settlement.

10. Reporting Requirements.

The Debtor shall prepare and maintain and upon reasonable notice provide to Secured Creditor for examination the following records:

    A. All records required to be kept or maintained by the Debtor, including those required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the rules of this Court and the United States Trustee.

    B. All records required to be kept or maintained by the terms and conditions of this Stipulation, and any other agreement executed by the Debtor in favor of Secured Creditor.

    C. In addition, the Debtor shall provide to Secured Creditor the following reports in a timely manner.

        1. On or before execution of this Stipulation, the Debtor shall provide Secured Creditor with copies of all non-confidential documents filed by the Debtor with the Office of the U.S. Trustee.

        2. No later than the 20th day of each month commencing September 20, 2011, Debtor shall provide to Secured Creditor an accounting of all receipts, disbursements and accruals for the prior month, with sufficient detail that Secured Creditor can determine the source and use of such receipts, disbursements and accruals, together with a monthly cash flow statement, a profit and loss statement.

        3. The Debtor shall also provide Secured Creditor in a timely and prompt fashion all reports or other information required by the Loan Documents and any other agreement executed by the Debtor in favor of Secured Creditor or any other agreement which may in the future be executed by the Debtor in favor of Secured Creditor.

        4. No later than the 20th day of each month commencing September 20, 2011, the Debtor shall also provide to Secured Creditor with detailed accounts payable agings and detailed accounts receivable agings containing the identity of the payee or account debtor, the amount of the payable or receivable, and the date on which such payment is due.

D.  Inspection Rights.  Secured Creditor is authorized, in its discretion, to reasonably audit the Debtor's books and records, and to inspect the Collateral.  Secured Creditor or its designated representative or agent shall be entitled on reasonable notice to inspect the books and records of the Debtor at any time during normal business hours.  Pursuant to the Loan Documents, Debtor is required to bear the costs of such inspections.

E.  In addition to the foregoing inspection rights, Secured Creditor shall have and be entitled to all inspections or other information required by the Loan Documents or any other agreement which may in the future be executed by the Debtor in favor of Secured Creditor.

F.  Insurance.  The Debtor shall maintain insurance at all times for the Collateral and shall provide evidence of the same to Secured Creditor.

11. Default; Remedies Upon Default.

A.  Any failure of the Debtor to perform fully or satisfy the promises, duties, covenants, provisions or terms of this Stipulation, the Loan Documents, or any breach of a representation or warranty therein, shall be an event of default under this Stipulation unless timely cured. Any such default under this Stipulation or any other agreement between the parties shall constitute a default under all agreements between the parties. In the event of a default:

B.  Secured Creditor may provide the Debtor with written notice stating that a default has occurred (which notice may be given by facsimile transmission and/or email to counsel for the Debtor).  Upon the failure of the Debtor to cure such default by 5:00 p.m. on the fifth day following the day on which such notice is given, then:

(i) the Debtor's right under this stipulation to use Cash Collateral shall terminate, and,

(ii) unless the Court orders otherwise, the Debtor shall immediately stop using the Cash Collateral and the Debtor shall immediately sequester all Cash Collateral received, i.e., no deductions for the expenses identified in the Budget.

(iii) further, Secured Creditor shall be entitled to move for ex parte relief from the automatic stay upon filing a declaration of default with the Court and the Debtor may

only object to such relief by providing evidence that such default has been cured or does not otherwise exist.

12. **Bankruptcy Court Approval.**

The Debtor shall immediately seek Bankruptcy Court Approval of this Stipulation.

13. **Term.**

Upon the entry of an order by this Court approving the terms of this Stipulation, the Debtor's right to use Secured Creditor's Cash Collateral shall become effective as of the Petition Date and shall continue in effect until the sooner of (a) November 30, 2011, (b) an event of default, or (c) further order of the Court. The term of this Stipulation may be extended by written agreement of the Debtor and Secured Creditor.

14. **Reservation of Rights.**

Secured Creditor shall have the right to waive any of the rights, remedies or powers granted herein, and shall have no obligation or duty to any other person or party with respect to the exercise of said rights, remedies or duties. Delay in or failure to exercise any rights, remedies or duties shall not subject Secured Creditor to any liability to any other person or party, nor shall any other person or party rely upon, or in any way assert as a defense to any obligation owing to Secured Creditor such delay or failure. All of Secured Creditor's rights and remedies in law and equity are specifically reserved.

15. Nothing contained in this Stipulation or the order approving this Stipulation shall be deemed or construed to waive, reduce or otherwise diminish the rights of Secured Creditor to seek additional or different adequate protection of its interest under the Loan Documents, or to take any other action in this Chapter 11 case including seeking relief from stay at an earlier date. Nothing contained in this Stipulation or the order approving this Stipulation shall be deemed or construed to be an admission that Secured Creditor is adequately protected.

/ / /

/ / /

/ / /

*NOW THEREFORE*, the parties stipulate to the foregoing use of Cash Collateral from the Petition date through the term of this Stipulation as provided for herein.

Dated: September 16, 2011

DOWNEY BRAND

By: _____
Jamie Dreher, Attorneys for Debtor,
SHASTA LAKE RESORTS, LP

Dated: September 16, 2011

FRENCH & LYON
A Professional Corporation

By: _____
Patricia H. Lyon, Attorneys for Secured Creditor,
BANK OF AMERICA, N.A.

-11-

1187169.2

|  | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|
| Beginning Cash Bal | 1,845,296 | 1,228,291 | 928,583 | 617,972 | 216,569 |  |
|  |  |  |  |  |  |  |
| **Cash Inflows:** |  |  |  |  |  |  |
| Houseboat & Other Boat Rentals | 265,469 | 99,661 | 21,321 | 6,614 |  |  |
| Berth Rents | 59,500 | 25,631 | 22,821 | 26,654 |  |  |
| Retail Sales | 298,049 | 117,412 | 35,917 | 14,915 |  |  |
|  |  |  |  |  |  |  |
| Total Inflows | 623,018 | 242,704 | 80,059 | 48,182 |  |  |
|  |  |  |  |  |  |  |
| **Cash Outflows:** |  |  |  |  |  |  |
| Inventory Purchases | 252,400 | 132,950 | 33,200 | 6,400 |  |  |
| Advertising | 5,862 | 14,375 | 17,633 | 40,000 |  |  |
| Banking Fees | 400 | 400 | 800 | 400 |  |  |
| Credit Card Discounts/Data Processing/Cash O&S | 22,300 | 13,157 | 3,265 | 2,124 |  |  |
| Management Fee-WRI | 116,441 | 107,509 | 47,114 | 4,000 |  |  |
| Insurance | 95,000 | 18,000 | - | 128,000 |  |  |
| Employee Training/Travel/Education | 1,800 | 2,355 | 1,101 | 3,830 |  |  |
| Principal & Interest | 13,200 | 33,200 | 33,200 | 33,200 |  |  |
| Labor & Burden | 172,439 | 154,822 | 131,833 | 113,963 |  |  |
| Professional Fees/Legal/Accounting | 25,744 | 27,000 | 22,183 | 16,659 |  |  |
| Taxes/Licenses-Other | 64,200 | 1,500 | 5,800 | 2,500 |  |  |
| Repairs/Maintenance | 8,600 | 5,100 | 5,200 | 4,745 |  |  |
| Refuse | 1,500 | 2,021 | 2,099 | 700 |  |  |
| Rent-Govt & Other | 16,924 | 9,137 | 10,137 | 59,137 |  |  |
| Supplies/Fuel | 53,759 | 26,321 | 11,351 | 6,928 |  |  |
| Utilities (including Communications) | 12,126 | 12,505 | 11,675 | 9,500 |  |  |
| Capital Improvement Expenditures | 800 | 3,200 | 3,000 | 3,000 |  |  |
| Deposits to Vendors/BK | 7,000 |  |  |  |  |  |
| Vestra Underground CleanUp Costs (Reimb later) | 4,800 | 4,800 | 4,800 | 3,000 |  |  |
| Sales Tax | 24,941 | 12,060 | 8,780 | 1,000 |  |  |
| Refund of Customer Deposits-Shasta | 250,000 | 140,000 | 30,000 | 8,000 |  |  |
| Refund of Customer Deposits-Melones | 65,000 | 75,000 | 7,500 | 2,500 |  |  |
| Funds held in Trust - NM RAFI Acct (Beg Cash includes this amt/back out) | 58,527 |  |  |  |  |  |
| Receipts on Accounts Receivable | (33,739) | (253,000) |  |  |  |  |

Note:
Houseboat Sales & Princ Pmts to Bank result in no cash increase/decrease

9/16/2011

## Detail for Shasta & Overhead

| Cash Inflows: | | | | |
|---|---:|---:|---:|---:|
| Houseboat & Other Boat Rentals | 173,069 | 71,961 | 17,921 | 3,314 |
| Berth Rents | 1,600 | 2,830 | - | 5,652 |
| Retail Sales | 212,262 | 73,700 | 26,112 | 8,537 |
| Total Inflows | 386,931 | 148,491 | 44,033 | 17,503 |
| | | | | |
| Cash Outflows: | | | | |
| Inventory Purchases | 183,000 | 98,200 | 22,300 | 4,200 |
| Advertising | 4,975 | 13,675 | 17,133 | 39,500 |
| Banking Fees | 400 | 400 | 800 | 400 |
| Credit Card Discounts/Data Processing/Cash O&S | 18,000 | 9,092 | 2,745 | 1,604 |
| Management Fee-WRI | 116,441 | 107,509 | 47,114 | 4,000 |
| Insurance | 95,000 | 18,000 | - | 128,000 |
| Employee Training/Travel/Education | 1,300 | 2,274 | 1,000 | 3,680 |
| Principal & Interest | 6,600 | 26,600 | 26,600 | 26,600 |
| Labor & Burden | 111,749 | 113,375 | 97,118 | 85,695 |
| Professional Fees/Legal/Accounting | 13,229 | 17,500 | 13,483 | 9,039 |
| Taxes/Licenses-Other | 50,600 | 1,500 | - | 2,500 |
| Repairs/Maintenance | 6,400 | 3,100 | 3,700 | 3,245 |
| Refuse | 250 | 521 | 799 | 100 |
| Rent-Govt & Other | 977 | 9,037 | 10,037 | 23,037 |
| Supplies/Fuel | 44,161 | 22,288 | 8,780 | 5,218 |
| Utilities (including Communications) | 8,405 | 8,005 | 7,775 | 6,375 |
| Capital Improvement Expenditures | 800 | 3,200 | 3,000 | 3,000 |
| Deposits to Vendors/BK | 7,000 | | | |
| Vestra Underground CleanUp Costs (Reimb later) | 4,800 | 4,800 | 4,800 | 3,000 |
| Sales Tax | 24,941 | 12,060 | 8,780 | 1,000 |
| Refund of Customer Deposits-Shasta | 250,000 | 140,000 | 30,000 | 8,000 |
| Refund of Customer Deposits-Melones | 65,000 | 75,000 | 7,500 | 2,500 |
| Funds held in Trust - NM RAFI Acct (Beg Cash includes this amt/back out) | 58,527 | | | |
| Receipts on Accounts Receivable | (33,739) | (253,000) | | |

## Detail for Melones

| Cash Inflows: | | | | |
|---|---:|---:|---:|---:|
| Houseboat & Other Boat Rentals | 92,400 | 27,700 | 3,400 | 3,300 |
| Berth Rents | 57,900 | 22,801 | 22,821 | 21,002 |
| Retail Sales | 85,787 | 43,712 | 9,805 | 6,378 |
| Total Inflows | 236,087 | 94,212 | 36,026 | 30,679 |
| | | | | |
| Cash Outflows: | | | | |
| Inventory Purchases | 69,400 | 34,750 | 10,900 | 2,200 |
| Advertising | 887 | 700 | 500 | 500 |
| Banking Fees | | | | |
| Credit Card Discounts/Data Processing/Cash O&S | 4,300 | 4,065 | 520 | 520 |
| Management Fees / Inc. in OH | | | | |
| Insurance / Inc. in OH | | | | |
| Employee Training/Travel/Education | 500 | 81 | 101 | 149 |
| Principal & Interest | 6,600 | 6,600 | 6,600 | 6,600 |
| Labor & Burden | 60,690 | 41,448 | 34,715 | 28,269 |
| Professional Fees/Legal/Accounting | 7,215 | 7,500 | 6,700 | 7,620 |
| Taxes/Licenses-Other | 13,600 | - | 5,800 | - |
| Repairs/Maintenance | 2,200 | 2,000 | 1,500 | 1,500 |
| Refuse | 1,250 | 1,500 | 1,300 | 600 |
| Rent-Govt & Other | 15,947 | 100 | 100 | 36,100 |
| Supplies/Fuel | 9,598 | 4,033 | 2,571 | 1,710 |
| Utilities (including Communications) | 3,721 | 4,500 | 3,900 | 3,125 |

Detail for McClure

Cash Inflows:
None/Business Assumed by Merced Irrig. District 6/2011

Total Inflows                                                         -              -              -              -

Cash Outflows:
Professional Fees/Legal/Accounting                              5,300          2,000          2,000             -